**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | **FILED UNDER SEAL PURSUANT TO** |
| *ex rel.* BRIANNA MICHAELS and | * | **31 U.S.C. §3730 AND** |
| AMY WHITESIDES, | * | **LOCAL CIVIL RULE 5.03** |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | Civil Action No.: 0:12-cv-03466-JFA |
| | * | |
| | * | COMPLAINT |
| AGAPE SENIOR COMMUNITY, INC.; | * | |
| AGAPE SENIOR PRIMARY CARE, INC.; | * | JURY TRIAL DEMANDED |
| AGAPE SENIOR SERVICES, INC.; | * | **DO NOT PLACE IN PRESS BOX** |
| AGAPE SENIOR, LLC; | * | |
| AGAPE MANAGEMENT SERVICES, INC.; | * | **DO NOT ENTER ON PACER** |
| AGAPE COMMUNITY HOSPICE, INC.; | * | |
| AND AGAPE NURSING | * | |
| AND REHABILITATION CENTER, INC. | * | |
| d/b/a AGAPE REHABILITATION OF | * | |
| ROCK HILL a/k/a AGAPE SENIOR POST | * | |
| ACUTE CARE CENTER – ROCK HILL a/k/a | * | |
| EBENEZER SENIOR SERVICES, LLC, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER THE FALSE CLAIMS ACT, ANTI-KICKBACK STATUTE AND HEALTH CARE FRAUD STATUTE

Plaintiff-Relators, Brianna Michaels and Amy Whitesides, on behalf of themselves and the United States of America, through their attorneys, allege as follows:

### I.   PARTIES RELATORS

1.   Plaintiff-Relator Brianna Michaels ("Michaels") is a citizen of the United States of America, residing in Charlotte, North Carolina.  At all material times herein, Michaels was and is a registered nurse licensed to practice in South Carolina.  From April 11, 2012 to August 23, 2012, Michaels was

employed by Defendants, specifically to work for Agape Senior Community Hospice, Inc. as a RN

Case Manager for the Agape Hospice program operating in the Rock Hill, South Carolina area.  The

termination of Michaels' employment was a retaliatory discharge by Defendants for "losing a patient"

by allowing one of her patients to go to a hospital emergency room, as the patient and his family

wanted, instead of transferring him to the Agape skilled nursing facility for General Inpatient Care

("GIP") as her supervisors instructed, regardless of the patient's wishes and health condition.

2. Plaintiff-Relator Amy Whitesides ("Whitesides") is a citizen of the United States of America and a

resident of the State of South Carolina, residing at 268 N. Burris Road, Sharon, York County, South

Carolina.  At all material times herein, Whitesides was and is a registered nurse licensed to practice in

South Carolina.  From July 7, 2010 to the present, Whitesides has been employed by Defendants

specifically to work for Agape Senior Community Hospice, Inc. as a RN Case Manager in the Rock

Hill, South Carolina area.

3. As a result of their employment with Defendant Agape Senior, LLC, Relators have personal and

direct knowledge of the fraudulent practices of the Defendants, as set forth herein, that are in direct

violation of federal and state health care benefit program requirements and federal laws.

4. Relators bring this action based on their direct, independent and personal knowledge and

observations, conversations, meetings, email communications, medical records, documentation and

also, upon information and belief, based on facts known to them.

5. Relators are aware of patients fraudulently admitted to hospice who do not qualify for the program, as

well as patients fraudulently and repeatedly re-certified to hospice who do not qualify for the program

as well as fraudulent billing by assisted living and skilled nursing facilities for care and services that

they are not providing.

6. Relators have questioned hospice determinations but have been ignored.

7. Relators are the "original source" of the information alleged herein as that term is used in the False

Claims Act context.

8.  Relators bring this action on behalf of the United States of America pursuant to 31 U.S.C. §3730(b)(1), 42 U.S.C. §1320a-7b et seq., and 18 U.S.C. §1347 et seq., federal law and the common law of South Carolina.  The United States of America is a sovereign country whose Department of Health and Human Services pays claims submitted to it by Defendants through its Medicaid and Medicare programs for hospice, assisted living and skilled nursing services, among other services provided by Defendants.

## II.  PARTIES - DEFENDANTS

9.  That upon information and belief, Defendant Agape Senior Community, Inc. ("ASC") is a corporation authorized and existing under the laws of the State of South Carolina and is doing business in York County and other locations throughout the State of South Carolina.

10. That upon information and belief, Defendant Agape Senior Primary Care, Inc. ("ASPC") is a corporation authorized and existing under the laws of the State of South Carolina and is doing business in York County and other locations throughout the State of South Carolina.

11. That upon information and belief, Defendant Agape Senior Services, Inc. ("ASSI") is a corporation authorized and existing under the laws of the State of South Carolina and is doing business in York County and other locations throughout the State of South Carolina.

12. That upon information and belief, Defendant Agape Senior, LLC ("Agape, LLC") is a limited liability corporation authorized and existing under the laws of the State of South Carolina and is doing business in York County and other locations throughout the State of South Carolina.

13. That upon information and belief, Defendant Agape Management Services, Inc. ("AMS") is a corporation authorized and existing under the laws of the State of South Carolina and is doing business in York County and other locations throughout the State of South Carolina.

14. That upon information and belief, Defendant Agape Nursing and Rehabilitation Center, Inc. ("Agape N & R") ( a/k/a Ebenezer Senior Services, LLC) a/k/a Agape Senior Post Acute Care Center – Rock

Hill is a corporation authorized and existing under the laws of the State of South Carolina and is doing business in York County in the State of South Carolina.

15. That upon information and belief, all Defendants, with the exception of Ebenezer Senior Services, LLC, are for-profit entities incorporated under the laws of the State of South Carolina.

16. That upon information and belief, Defendants delivered hospice care, assisted living care, skilled nursing care, as well as other services, for a fee and had authority, express or implied, to control the means and agencies employed to execute the delivery of such care to its patients and/or residents.

17. That upon information and belief, Defendants ASC, ASPC, ASSI, AGAPE LLC, AMS and AGAPE N & R ("Defendants") were involved in the ownership, operation, and/or management of medical, nursing, hospice , skilled nursing, assisted living and other care for profit. Further, Defendants, at all times relevant hereto, exerted managerial and operational control over the hospice program, and that such control was so extensive and pervasive that Defendants actually operated and managed the hospice and assisted living programs.

18. That upon information and belief, all Defendants named herein are or have been involved in training, supervision, development, management, consulting and implementation of policies and procedures, documentation, claim submission and billing for Agape Senior, LLC's hospice, skilled nursing and assisted living services and have directly controlled their operations.

19. That upon information and belief, Defendants provided hospice services to patients residing in a variety of settings, including, but not limited to, private homes, assisted living facilities and skilled nursing facilities.

20. That Defendants were and are, at all times relevant to this action, "participating providers", as defined in Title 42 of the Code of Federal Regulations, in one or more of the Federal health care benefit programs by enrolling and entering into Participating Provider Agreements that require the providers to submit only truthful and accurate claims for reimbursement.

21. That upon information and belief, all Defendants have engaged in substantial business activities in South Carolina, including, but not limited to, submission of false statements and false claims for care

and services provided in South Carolina, marketing, management, supervision, training, administration, operation, control and/or ownership of the entities and facilities providing the hospice, skilled nursing and assisted living care and services at all relevant times hereto.

22.  That upon information and belief, all Defendants named herein have promulgated and established the policies, procedures, protocols, staffing decisions, administrative decisions, clinical decisions, documentation decisions, billing decisions and budgetary decisions for Agape Senior, LLC's hospice, skilled nursing and assisted living services, and have directly controlled any and all business and billing practices for same.

### III. JURISDICTION AND VENUE

23. Plaintiff Relators, through their counsel, have voluntarily provided the information to the Government before filing this action.

24. Plaintiff Relators, through their counsel, bring this action against the above-named Defendants  as a result of Defendants' violations of the Federal Anti-Kickback Statute by offering prohibited inducements for utilization (i.e., referral, enrollment) of their hospice program and False Claims Act and Health Care Statute by knowingly and repeatedly submitting false statements and false claims to the United States  to obtain Medicare, Medicaid and Tricare money payments from the federal government that would not have been paid had the truth of the false statements and false claims been known, pursuant to the *qui tam* provision of the False Claims Act, 31 U.S.C. §§3729 *et seq.* , as well as the Anti-Kickback and Health Care Fraud Statutes, to recover treble damages, civil penalties and all other relief available under the Act .

25. As a result of Defendants' knowing and recurring false and/or fraudulent statements, claims, enrollments, actions, inducements and submissions, Defendants wrongfully obtained millions of dollars from the United States that they were not entitled to receive.

26. This action arises under 31 U.S.C. §3729 et seq., 42 U.S.C. §1320a-7b et seq., and 18 U.S.C. §1347 et seq.  This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §3732(a). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331.

27. This Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. §3732(a) because Defendants reside and transact business in the State of South Carolina. Additionally, the Defendants committed acts in violation of 31 U.S.C. §3729 et seq., 42 U.S.C. §1320a-7b et seq., and 18 U.S.C. §1347 et seq. within the judicial district which is the District of South Carolina.

28. Jurisdiction lies in this Court pursuant to 28 U.S.C. §§1345 and 1355, as well as supplemental jurisdiction under 28 U.S.C. §1367(a).

29. Venue is proper in this District pursuant to 31 U.S.C. §3729 et seq., 42 U.S.C. §1320a-7b et seq., and 18 U.S.C. §1347 et seq., because the acts proscribed by therein and complained of herein took place within this District, including the Rock Hill division, as well as other places in South Carolina. . Additionally, venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because at all times material and relevant, Defendants transacted business in this District as well as this Division, including, but not limited to, the actions described herein.

## IV. FEDERAL HEALTH CARE BENEFIT PROGRAMS

30. Upon information and belief, Medicare, Medicaid and Tricare are each considered a "health care benefit program" as defined in 18 U.S.C. §24(b) and a "federal health care program" as defined in 42 U.S.C. §1320a-7b(f).

31. Upon information and belief, the laws, regulations and rules applicable to Medicare regarding the payment of claims for health care services are likewise applicable to Tricare and Medicaid, and there are additional state laws, regulations and rules regarding Medicaid.

32. Upon information and belief, the federal health care benefit programs require health care providers to file an enrollment application in order to qualify to receive the programs' benefits. Upon information and belief, Defendants submitted enrollment applications to these federal program providers certifying that they would comply with Medicare and Medicaid laws, regulations, and program instructions, and further certified that they understood that payment of a claim by Medicare and Medicaid was conditioned upon the claim and underlying transaction complying with such laws,

regulations, and program instructions, including, but not limited to, the Federal Anti-Kickback, Health Care Fraud and Stark statutes.

33. Section §1814(a)(7) of the Social Security Act (42 U.S.C. §1395) specifies that an individual must be entitled to Part A of Medicare and be certified as terminally ill to be eligible to elect hospice case under Medicare. An individual is considered to be terminally ill if the medical prognosis is that the individual's life expectancy is six months or less if the illness runs its normal course. Certification of the terminal illness for hospice benefits shall be based upon the clinical judgment of the hospice physician and the individual's attending physician. An individual, or his authorized representative, must elect hospice care to receive it. If the individual, or authorized representative, elects to receive hospice care, he or she must file an election statement with particular hospice. The written certification for eligibility for a hospice election must include:

   a.  The statement that the individual's medical prognosis is that their life expectancy is six months or less if the terminal illness runs its normal course;

   b.  Specific clinical findings and other documentation supporting a life expectancy of six months or less, and

   c.  The signature of the physician.

34. The hospice must retain the certification statements.

## V. DEFENDANTS' WRONGFUL ACTS, FRAUDULENT SCHEMES AND PROHIBITED INDUCEMENTS

35. During their employment with Defendants, the Relators' regular duties and responsibilities included, among other things, patient care, completing paper and electronic forms relating to  patient certification, enrollment, transfer, treatment, and billing to Medicare, Medicaid and/or Tricare, among other payors,  on behalf of their assigned Agape hospice patients.

36. Relators are familiar with the regulatory requirements and Defendants' directives, instructions and actions contrary thereto.

37. Relators have discovered so many instances of fraud that they believe the marketing, false certifications, false recertifications, and fraudulent billing of federal health care benefit programs for hospice care to unqualified patients as well as ALF and SNF billing for care and services not provided, among other things, is a widespread, systematic practice of Defendants.

38. Relators are aware of the following practices of Defendants occurring on an ongoing, regular, systematic and widespread basis at Agape Senior, LLC and other Defendants named herein:

    a.   Certification and Recertification of Hospice Patients

        i. Physicians

           A.   the certification and/or recertification documents of many hospice patients have not been signed by physicians at all;

           B.   the certification and/or recertification documents of many hospice patients were not timely signed and, in some instances, have backdated the signatures;

           C.   at times, the certifying information is supplied by the hospice nursing staff and signed off on by the MD or NP;

           D.   many doctors' orders do not state that the individual's medical prognosis is that their life expectancy is six months or less if the terminal illness runs its normal course and/or contain no specific clinical findings or other documentation supporting a life expectancy of six months or less;

           E.   a nurse practitioner visiting patients and recertifying the terminal illness of the patient and their eligibility to continue to receive hospice services, with no doctor providing such recertification;

           F.   at times, the certifying information is supplied by the hospice nursing staff and signed off on by the MD or NP; and

G.  Defendants' doctors frequently sign certifications of patients as qualifying for hospice without having seen the patient or having reviewed patient records at the time of their certification.

ii.  False documentation of condition

A.  The hospice documentation as to an individual's condition is not accurate and/or is internally inconsistent;

B.  Hospice patient records show many requiring "100% assistance" with activities of daily living which is inconsistent with other hospice records and records of other providers and/or facilities;

C.  Hospice patient certification and recertification records showing diagnoses, conditions and functional capacities that are in direct odds with patients' diagnoses from treating physician(s) and patient's documented assessments ;

D.  RN case managers are instructed to always click the "yes" box on the electronic form to indicate that the doctors' admission orders state the individual's life expectancy is six months or less if the illness runs its normal course, and that such should always be assumed regardless of whether the doctors' orders for hospice admission state such;

E.  Relators have been sent to see specific patients that were referred "to go admit them", rather than to evaluate them for admission into the hospice program; and

F.  RN case managers have been instructed to enter and/or change diagnoses to ensure patients meet current hospice reimbursement requirements, even when those patients do not qualify for the

hospice program, as evidenced by patient assessment and/or records .

    iii.   Ineligible Hospice patients

        A.  Some of Defendants' hospice patients are designated as non-terminal on their certification/recertification forms;

        B.  Some of Defendants' hospice patients have listed diagnoses on certification/recertification forms that do not qualify for hospice services;

        C.  Many of Defendants' hospice patients do not have a diagnosis of a terminal illness, but have simply been certified on the bases of "failure to thrive", "debility" and "dementia"; and

        D.  Many of Defendants' hospice patients have been recertified for over 5 benefit periods, which is double the hospice life expectancy of 6 months, some even up to 17 hospice benefit periods, despite not qualifying for hospice services from the beginning.

b. Marketing of Hospice Program

    i.   marketing to assisted living and skilled nursing facilities that in exchange for enrolling a designated number of residents in Defendants' hospice program, the facility will receive from the hospice program a nurse and/or nursing assistant assigned exclusively to their facility to assist with patient care; marketing to prospective hospice patients that hospice will provide certain medications, supplies and durable medical equipment at minimal or no cost to patients if they enroll in the hospice program; upon hospice certification, patients are automatically withdrawn from any prior supplier of durable

medical equipment ("DMEs") and supplies and Defendants supply all DMEs and supplies that Defendants' hospice program deems appropriate;

ii.  Relators received instructions, orally and via electronic communications, to find additional patients to enroll in hospice from facilities where they already had patients in order to meet goals or quotas, regardless of whether they truly qualified for hospice benefits;

iii. Incentives were offered and provided to those who enrolled additional hospice patients even if the new enrollees were not terminally ill or entitled to hospice benefits, not only to receive additional revenue for the additional patients, but also to receive additional compensation based upon the higher number of patients in the daily census; and

iv.  Marketing to physicians to refer patients to Defendants' hospice program and taking them to dinner at restaurants to induce them to do so.

c. Inappropriate referral to Defendants' GIP care

i.  Strongly encouraging patients and their families through RN Case Managers to be admitted to Defendants' skilled nursing facility for GIP care, so that Agape will receive a higher daily reimbursement rate, and discouraging them from seeking hospital care for acute conditions not related to their terminal illness, even when in the patient's best interest medically, so that Agape will not have to pay for those medical costs; on numerous occasions, this has resulted in imminent and avoidable death to the patient from causes unrelated to their terminal diagnosis, if any, due to them receiving a lower level of care than required by their medical condition;

ii.  Strongly discouraging the hospital from treating or admitting hospice patients, even when it is in the patient's best interest medically, by requiring RN Case Managers to go to the hospital and instruct hospital personnel that

this is a hospice patient, not to perform invasive treatments and that they will not receive payment for care provided to that individual, even when the individuals are eligible to receive hospital care for their current acute condition; on numerous occasions, this has resulted in imminent and avoidable death to the patient from causes unrelated to their terminal diagnosis, if any, due to them receiving a lower level of care than required by their medical condition; and

iii.  When Relator Michaels did not follow the requirements set forth above due to patient/family requests and the patient's best medical interest, Defendants terminated her employment in retaliation and provided a pretextual reason for the retaliatory discharge.  [Reference: JT].

d. Fraudulent Billing Practice of Assisted Living and Skilled Nursing Facilities

i.  Some of the Defendants' and other assisted living facilities ("ALFs") and skilled nursing facilities ("SNFs") have enrolled a sufficient number of its residents in the Defendants' hospice program to receive full-time nurses and/or nursing assistants assigned exclusively to their respective facilities from the Defendants' hospice program to provide nursing, personal care services, assistance in activities of daily living and the provision of all nursing assistant services for the Defendants' hospice patients residing at the respective facilities (as well as other residents), instead of the nursing assistants providing such services while the hospice nursing assistants only provide services for the individual's terminal condition;  and

ii.  upon information and belief, the Defendants' ALFs and SNFs (i.e., York and Rock Hill) fraudulently submit claims and receive payments for room and board services, which are required to include the provision of personal care services and assistance in activities of daily living (absent a level of care

waiver, which has not been obtained) although they are not providing such services and assistance.

## VI. DEFENDANTS' VIOLATIONS OF LAW

### FIRST CAUSE OF ACTION
### PRESENTATION OF FALSE CLAIMS
### (FALSE CLAIMS ACT, 31 U.S.C. §3729(a)(1)(A))

39.    Plaintiff- Relators hereby incorporate, repeat and reallege all paragraphs of this Complaint as if fully set forth herein.

40. Defendants, by or through their agents, officers or employees, knowingly presented or caused to be presented, and continue to present or cause to be presented, false and fraudulent claims for payment or approval to the United States.

41. Defendants presented such false and fraudulent claims with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false, and continue to do so.

42. Defendants knowingly submitted false or fraudulent certifications, recertifications and claims for hospice care for patients whom they knew were not terminally ill or not eligible for hospice care benefits. Defendants knew they were not entitled to receive such benefits and payments because the patients were not terminally ill or eligible for hospice care benefits and/or were not provided hospice care but, rather, curative health care.

43. Defendants knew such claims they were submitting were false or fraudulent by virtue of knowing that the patients they were submitting claims on behalf of patients who were not terminally ill or eligible for hospice care benefits.

44. Defendants knowingly submitted false or fraudulent claims for services not provided as required as part of room and board charges at Defendants' ALFs and SNFs. Defendants knew they were not entitled to receive such benefits and payments because they knew they were not providing such care and services as are required for reimbursement of room and board charges.

45. Defendants knew such claims they were submitting were false or fraudulent by virtue of knowing that they were not providing said required care and services to patients on whose behalf they were submitting claims for room and board.

46. The United States relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid the Defendants for these false and fraudulent claims had it known the truth of the falsity of the said federal health care benefit program claims, including Medicare, Medicaid and Tricare claims, by the Defendants.

47. Defendants' fraudulent actions described herein are part of a company-wide, systematic pattern and practice of knowingly submitting or causing to be submitted false claims to the United States through fraudulent certification and re-certification of hospice patients and fraudulent billing of the United States through federal health care benefit programs.

48. That the false or fraudulent claims submitted to the federal government for hospice, assisted living and skilled nursing services were directed, authorized, approved and ratified by all Defendants named herein

49. As a direct and proximate result of the false and fraudulent claims and statements submitted by Defendants, the United States has suffered damages, and therefore is entitled to treble damages, civil penalties, and all other relief available under the False Claims Act, 31 U.S.C. §§3729 *et seq.*

**SECOND CAUSE OF ACTION**
**MAKING OR USING FALSE RECORDS OR FALSE STATEMENTS**
**(FALSE CLAIMS ACT, 31 U.S.C. §3729(a)(1)(B))**

50. Plaintiff- Relators hereby incorporate, repeat and reallege all paragraphs of this Complaint as if fully set forth herein.

51. Defendants, by or through their agents, officers or e5mployees, knowingly made, used or caused to be made or used, and continue to make, use and cause to be made or used, false records or false statements material to the foregoing false or fraudulent claims in order to get these false or fraudulent

claims or paid or approved by the United States Government through federal health care benefit programs, in violation of 31 U.S.C. §§3729 *et seq.*

52. The Defendants' knowingly false records or false statements were material, and continue to be material, to the false and fraudulent claims for payments or reimbursement they made and continue to make to the United States through federal health care benefit programs, including Medicare, Medicaid and Tricare.

53. The Defendants' false records or false statements were made, used or caused to be made or used, and continue to be made, used and caused to be made and used, with the Defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

54. The United States relied on these false records or false statements, was ignorant of the truth regarding these claims, and would not have paid the Defendants for claims based upon these false records or false statements had it known the truth of the falsity of the said records or statements made by Defendants.

55. Defendants' making false records or false statements, as described herein, is part of a company-wide, systematic pattern and practice of knowingly submitting or causing to be submitted claims to the United States through federal health care benefit programs based upon false records or false statements.

56. That the false records or false statements submitted to the federal government for hospice, assisted living and skilled nursing services were directed, authorized, approved and ratified by all Defendants named herein

57. As a direct and proximate result of the materially false records or statements, and the related false or fraudulent claims made by Defendants, the United States has suffered damages, and therefore, is entitled to treble damages, civil penalties, and all other relief available under the False Claims Act, 31 U.S.C. §§3729 *et seq.*

### THIRD CAUSE OF ACTION
### CONSPIRACY
### (FALSE CLAIMS ACT, 31 U.S.C. §3729(a)(1)(C))

58. Plaintiff- Relators hereby incorporate, repeat and reallege all paragraphs of this Complaint set forth above as if fully set forth herein.

59. The defendants knowingly combined and conspired, and have knowingly aided and abetted each other, in the commission of violations of the False Claims Act, as more fully set forth herein.

60. In a conspiracy and in furtherance thereof, the Defendants knowingly presented, or caused to be presented, and continue to present or cause to be presented, false and fraudulent claims for payment or approval to the United States through federal health care programs, including Medicare, Medicaid and Tricare.

61. In a conspiracy and in furtherance thereof, the Defendants knowingly made, used or caused to be made or used, and continue to make, use and cause to be made or used, false records or false statements material to the foregoing false or fraudulent claims in order to get these false or fraudulent claims or paid or approved by the United States Government through federal health care benefit programs.

62. In a conspiracy and in furtherance thereof, the Defendants/conspirators acted knowingly in the foregoing overt acts of making, using and presenting false and fraudulent claims, statements, and records, or acted with reckless disregard or deliberate ignorance of whether or not the claims, statements and/or records were false and fraudulent, and continue to do so.

63. Defendants, in concert with one another, their principals, agents and employees, did agree to submit such false claims to the United States Government.

64. Defendants and/or their principals, agents and employees, did act, by and through the conduct described herein, in furtherance of the agreement to submit false claims to the United States Government.

65. Defendants and/or their principals, agents and employees, acted with the intent to defraud the United States by submitting false claims for payment or reimbursement through federal health care programs.

66. As a direct and proximate result of this combination and conspiracy by, between and among Defendants,, who each aided and abetted the other Defendants in furtherance of the conspiracy, the United States has suffered damages, and therefore is entitled to treble damages, civil penalties, and all other relief available.

**FOURTH CAUSE OF ACTION**
**RETALIATORY DISCHARGE**
**(FALSE CLAIMS ACT, 31 U.S.C. §3730(h))**

67. Plaintiff- Relators hereby incorporate, repeat and reallege all paragraphs of this Complaint set forth above as if fully set forth herein.

68. From April 11, 2012 through August 23, 2012, Plaintiff Relator Michaels was an employee of Agape Senior, LLC, working in the position of RN Case Manager in the Rock Hill-based hospice program.

69. During the course of such employment, Relator Michaels obtained personal knowledge of the foregoing fraudulent conduct of the Defendants.

70. When Relator Michaels refused to follow the illegal mandate of her superiors regarding her at-home patient [JT], she was disciplined and ultimately terminated. Her patient's medical condition required a higher level of medical care for his acute condition unrelated to his terminal diagnosis of lung cancer. In addition, the patient and his caretaker requested and desired treatment at the hospital. However, the superiors of Relator Michaels instructed her that he be admitted to Defendant Agape N & R skilled nursing facility for GIP care, for which Defendants would receive a higher level of payment, instead of having to pay the hospital for the care provided and losing the enrollment of the patient in their hospice program.

71. This patient [JT] was admitted to the hospital, diagnosed with double pneumonia and had to be transferred to another hospital for specific testing.

72. Relator Michaels was called to come to the office the day after this patient [JT] was admitted to the hospital to discuss what had happened. After a brief meeting, she was sent home and placed on suspension with no reason or explanation provided.

73. The day after that initial meeting, Relator Michaels was instructed to return to the home office for another meeting. At that meeting, her supervisors terminated her employment on the pretext that Relator Michaels rolled her eyes in the meeting.

74. In reality, Defendant Agape Senior, LLC, along with the other Defendants named herein, by and through their officers, agents, representatives and employees, unlawfully discriminated against Relator Michaels with respect to the terms and conditions of her employment, including, but not limited to, unlawfully discharging Relator Michaels as a direct and proximate result of, and in retaliation for, her lawful whistleblower acts to stop one or more of the Defendants' violation of the False Claims Act and demonstrating her unwillingness to follow the mandates of her superiors that were in violation of federal statutes, professional ethics as well as the patient's wishes and best interest.

75. Defendant Agape Senior, LLC also has repeatedly given unwarranted and false negative statements and opinions regarding Relator Michaels to prospective employers, including, but not limited to, stating that she was not eligible for rehire contrary to their conversation with Relator Michaels, thus depriving her of significant subsequent employment opportunities..

76. As a direct and proximate result of the Defendant Agape Senior, LLC's wrongful termination of Relator Michaels' employment in retaliation for her whistleblowing activities, she has suffered damages, and therefore is entitled to all relief necessary to make her whole, including, but not limited to, two times the amount of back pay, interest on the back pay, and compensation for special damages resulting from the retaliatory discharge, including litigation costs and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

77. Plaintiff- Relators hereby incorporate, repeat and reallege all paragraphs of this Complaint set forth above as if fully set forth herein.

18

78. That the wrongful termination of Relator Michaels' employment was Defendant Agape Senior LLC's response to her objections to the improper and illegal practices of Defendants, as set forth herein.

79. That the wrongful discharge of Relator Michaels by Defendant Agape Senior, LLC violates South Carolina and the United States laws against retaliatory dismissal and was, in fact, retaliatory in nature and the stated reason for her discharge was a pretext for the actual reason for her discharge which was her protected and lawful whistleblowing activities as well as her actions in the best interest of a patient's health and in accordance with his wishes.

80. The wrongful discharge of Relator Michaels' employment by Defendant Agape Senior, LLC constitutes a violation of a clear mandate of public policy of the State of South Carolina to protect employees from wrongful discharge when said employees report, complain about, and/or otherwise oppose fraudulent, illegal activities by the employer.

81. As a direct and proximate result of Defendant Agape Senior, LLC's wrongful termination of Relator Michaels' employment, she has suffered damages, and therefore is entitled to recover both actual and punitive damages in such amount as a jury may award.

**SIXTH CAUSE OF ACTION**
**ANTI-KICKBACK STATUTE VIOLATIONS**
**(42 U.S.C..§1320a-7b et seq.)**

82. Plaintiff- Relators hereby incorporate, repeat and reallege all paragraphs of this Complaint as if fully set forth herein.

83. Defendants, by or through their agents, officers or employees, have and are still knowingly and willfully making or causing to be made false statements or representations of material facts in applications for benefits or payments under  federal health care programs, in violation of the Anti-Kickback Statute as set forth more fully herein.

84. That Defendants, by or through their agents, officers or employees, have and are still knowingly and willfully making or causing to be made false statements or representations of material facts for use in

determining rights to federal health care program benefits or payments in violation of the Anti-Kickback Statute as set forth more fully herein.

85. That Defendants, by or through their agents, officers or employees, have and continue to have knowledge of and conceal or fail to disclose events affecting patients' initial and/or continued rights to federal health care program benefits or payments of patients on whose behalf they have applied for and/or received such benefits or payments with an intent to fraudulently secure such benefits in violation of the Anti-Kickback Statute as set forth more fully herein.

86. That Defendants, by or through their agents, officers or employees, have and continue to knowingly and willfully offer or pay any remuneration directly or indirectly, overtly or covertly, in cash or in kind to any person to induce him to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a federal health care program in violation of the Anti-Kickback Statute as set forth more fully herein.

87. That Defendants, by or through their agents, officers or employees, have and continue to knowingly and willfully offer or pay any remuneration directly or indirectly, overtly or covertly, in cash or in kind to any person to induce him to purchase, lease, or order any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program in violation of the Anti-Kickback Statute as set forth more fully herein.

88. That Defendants, by or through their agents, officers or employees, have and continue to knowingly and willfully make or cause to be made, or induce or seek to induce the making of, any false statement or representation of material facts with respect to the conditions or operation of any institution, facility or entity in order that such may qualify as an entity for which certification is required under any federal or state health care program, as set forth more fully herein.

89. That Defendants, by or through their agents, officers or employees, have and continue to knowingly and willfully offer or pay any remuneration directly or indirectly, overtly or covertly, in cash or in kind to any person to induce him to purchase, lease, or order any good, facility, service, or item for

which payment may be made in whole or in part under a Federal health care program in violation of the Anti-Kickback Statute as set forth more fully herein.

90. As a direct and proximate result of the Defendants' violations of the federal Anti-Kickback Statute, the United States has suffered damages, and therefore, is entitled to all criminal and civil penalties, and all other relief available under the Anti-Kickback Statute.

### SEVENTH CAUSE OF ACTION
### HEALTH CARE FRAUD STATUTE VIOLATIONS
### (18 U.S.C..§1347)

91. Plaintiff- Relators hereby incorporate, repeat and reallege all paragraphs of this Complaint as if fully set forth herein.

92. That Defendants, by or through their agents, officers or employees, have and continue to knowingly and willfully execute, or attempt to execute, a scheme or artifice to defraud any health care benefit program in violation of the Health Care Fraud statute, as set forth more fully herein.

93. That Defendants, by or through their agents, officers or employees, have and continue to knowingly and willfully execute, or attempt to execute, a scheme or artifice to obtain by means of false or fraudulent pretenses, representations or promises, any of the money or property owned by, or under the custody or control of any health care benefit program in connection with the delivery of or payment for health care benefits, items, or services in violation of the Health Care Fraud statute, as set forth more fully herein.

94. As a direct and proximate result of the Defendants' violations of the federal Health Care Fraud Statute, the United States has suffered damages, and therefore, is entitled to all criminal and civil penalties, and all other relief available under the Health Care Fraud Statute.

### EIGHTH CAUSE OF ACTION
### FRAUD, SUPPRESSION AND DECEIT

95. Plaintiff- Relators hereby incorporate, repeat and reallege all paragraphs of this Complaint set forth above as if fully set forth herein.

21

96. Defendants misrepresented or suppressed the material fact that a substantial number of its patients enrolled in their hospice do not qualify for hospice benefits under federal health care benefit programs and are not terminally ill.

97. Defendants were under an obligation to communicate to the United States that it had enrolled patients to receive hospice benefits and that it had billed the United States for service to patients who do not qualify for hospice benefits under federal health care benefit programs and are not terminally ill.

98. Such misrepresentations were made willfully to deceive or recklessly without knowledge.

99. The United States acted on Defendants' material representations, as described herein, to its detriment.


## VII. PRAYER FOR RELIEF

100.    Wherefore, Plaintiff-Relators respectfully request this Court to enter judgment against Defendants, jointly and severally, as follows:

a.  That the United States be awarded treble the amount of damages sustained because of Defendants' fraudulent activity and submission of false claims;

b.  That maximum civil penalties be imposed for each and every false claim presented or caused to be presented to the United States by Defendants;

c.  That pre-judgment and post-judgment interest be awarded;

d.  That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act violations alleged herein;

e.  That the Plaintiff-Relators be awarded the maximum amount allowed in the False Claims Act;

f.  That reasonable attorneys' fees, costs and expenses, which the Plaintiff-Relators necessarily incurred in bringing and pursuing this action, be awarded.

g.  That wrongful termination damages be awarded to Relator Michaels for her discriminatory and retaliatory discharge in the amount of two times the amount of back pay and benefits that she would have earned, interest on the back pay, front pay and benefits lost, litigation costs, reasonable attorneys' fees, actual, special and punitive damages; and

h.  That the Court award such other and further relief as it may deem just and proper.

Respectfully submitted,

*s/ Christy M. DeLuca*

_____

Christy M. DeLuca, Esquire (#7309)
Lara Pettiss Harrill, Esquire
McGOWAN, HOOD & FELDER, LLC
1539 Health Care Drive
Rock Hill, South Carolina 29732
Telephone:  (803) 327-7800
Facsimile:  (803) 328-5656
Emails: cdeluca@mcgowanhood.com
          lharrill@mcgowanhood.com

Attorneys for the Plaintiff Relators

December 6, 2012
Rock Hill, South Carolina